983 So.2d 148 (2008)
STATE of Louisiana
v.
Dale J. ARCENEAUX.
No. 07-KA-692.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 2008.
*149 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Gwendolyn K. Brown, Attorney at Law, Louisiana Appellate Project, Baton Rouge, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
This is a criminal proceeding in which defendant Dale Arceneaux was granted a timely out-of-time appeal.[1] He appealed his conviction of simple burglary, a violation of La.R.S. 14:62, and his six-year habitual offender sentence. We affirm the conviction and sentence. We remand with instructions.
A bench trial was held on May 24, 2006, and the trial judge found Mr. Arceneaux guilty as charged. About a month later on June 26, 2006, the trial judge sentenced defendant to six years at hard labor. He ordered that the sentence run concurrently with defendant's sentence for a related misdemeanor conviction. On the same day, the state filed a second-felony habitual offender bill of information. The trial judge accepted Mr. Arceneaux's admission to the habitual offender bill. He vacated defendant's original sentence and imposed a six-year hard labor habitual offender sentence, without benefit of probation or suspension of sentence. The court ordered that the sentence be served concurrently with defendant's misdemeanor sentence.
Jury Trial Waiver/Waiver of Appellate Right
On appeal, Mr. Arceneaux argued that the evidence was insufficient to support his conviction. Upon review of the record, we detected possible confusion as to whether defendant executed a valid waiver of his right to a jury trial. We noted that the jury trial issue was raised before trial proceeded and again at the time of defendant's admission to the habitual offender bill of information. We asked the parties to brief the issue. In response, defense counsel assigned a supplemental error. She argued that in the event we found the evidence was sufficient, we remand the matter for an evidentiary hearing on the validity of the waiver. The state likewise asked that the matter be remanded. For the following reasons, we find that defendant waived his right to appellate review of the adequacy of the jury trial waiver.
Before trial began, the trial judge allowed defense counsel to speak to defendant. Next, counsel informed the court that defendant would proceed with a judge trial. After other cases were called and a recess ended, trial commenced before the *150 trial judge. The minutes indicate that defendant was present during trial. In addition, the transcript reveals that defendant testified.
A month later at the sentencing hearing,[2] the prosecutor stated that the state agreed to only seek a double bill against Mr. Arceneaux in exchange for defendant giving up any rights he may have to argue he was not properly advised of his jury trial rights before proceeding to trial.
Counsel stated that he discussed with Mr. Arceneaux, who was present in court, any rights he may have to challenge the conviction. In particular, he said that defendant "is well aware of his rights to have had a judge trial or a jury trial." Defendant agreed with counsel's representations that he wanted a judge trial and would have waived a jury trial had he been asked in advance of the trial. Defendant also agreed that he did not intend to contest that issue in any way.
Counsel stated that Mr. Arceneaux wished to enter a guilty plea to a misdemeanor and to stipulate he was a second felony offender. Defendant, counsel, and the trial judge completed a waiver form. The trial judge placed defendant under oath and entered into a colloquy with him. Defendant testified he was 40 years old and attended school until the ninth grade. The trial judge specifically asked defendant if he waived "any issues of this trial as far as post-conviction relief or the fact" that he did not "on the record waive his right to a jury trial." Defendant responded affirmatively. Defendant agreed he waived any right to relief.
During the colloquy, Mr. Arceneaux admitted counsel had advised him of the allegations in the habitual offender bill of information, his right to be tried to establish the truth of the allegations, and his right against self-incrimination. He agreed that he understood by the stipulation he was waiving these rights. The trial judge informed defendant that if he did not understand anything, defendant could ask questions. Defendant testified he understood the sentencing range for the habitual offender sentence was six to 24 years at hard labor and that he would be sentenced to six years at hard labor without benefit of probation or suspension of sentence as a second felony offender.
Defendant denied that anyone forced, intimidated, or coerced him to "plead guilty." He also denied that anyone promised or rewarded him or any member of his family for the purpose of forcing him to "plead guilty." The trial judge informed defendant of his habitual offender rights to a trial by the court, his right to counsel, and his right to remain silent. Defendant testified he understood that by "pleading guilty" he was waving those rights. Defendant stated he had no questions and was satisfied. The trial judge accepted the habitual offender admission. He sentenced defendant in accordance with the negotiated sentence.
There is a constitutional right in Louisiana to an appeal. La. Const. art. 1, § 19. This right can only be waived by the defendant himself. State v. Simmons, 390 So.2d 504, 505 (La.1980) (citation omitted). Any waiver of right to appeal must be an informed one. Id., citing Arrastia v. United States, 455 F.2d 736 (5th Cir.1972); Flanagan v. Henderson, 496 F.2d 1274 (5th Cir.1974).
A majority of jurisdictions have held that allowing a defendant to waive the right to appeal is not inherently illegal or unfair. Leach v. State, 914 So.2d 519, 522 (Fla.App. 4 Dist.2005).
*151 In order to determine whether the waiver of appellate rights was informed, we consider by analogy the validity of the waiver of other constitutional rights in the taking of a guilty plea. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) enunciated three constitutional rights, which are waived by a guilty plea: the privilege against self-incrimination, the right to a trial by jury, and the right to confront one's accusers. Boykin requires that in taking a plea of guilty, an express and knowing waiver of these rights must be made, which waiver cannot be presumed from a silent record. 89 S.Ct. at 1712. The validity of a guilty plea turns on whether the defendant was informed of the rights he waived and whether his decision to waive them was knowing and voluntary. State v. Bouie, 00-2934 (La.5/14/02), 817 So.2d 48, 53 (citations omitted).
Although the instant case involves a stipulation to sentencing enhancement rather than a guilty plea, we find Boykin applicable since Boykin concerns the validity of the waiver of constitutional rights.
Here, the sentencing proceeding reveals that Mr. Arceneaux was clearly informed of the terms of the waiver. The trial judge questioned defendant closely under oath in order to ensure that he had a full understanding of the waiver and that he knowingly and voluntarily elected to waive his right to appeal that issue. The circumstances in the record reflect not only an informed waiver, but also a knowing and voluntary waiver of defendant's appellate right to challenge the adequacy of the jury trial waiver in compliance with the constitutional requirements of Boykin. Thus, we will not consider the supplemental assignment of error that questions the adequacy of the jury trial waiver.
Sufficiency
Mr. Arceneaux complains that the evidence was insufficient to support his burglary conviction since the evidence consisted solely of circumstantial evidence, which did not exclude every reasonable hypothesis of innocence. He also argues that the evidence is insufficient to prove that he entered the structure or that he possessed the intent to commit a theft therein.
The testimony and evidence at trial revealed the following.
On or about April 19, 2005,[3] there was a break-in at a shrimp packing company located in Jefferson Parish. David Lai, the business' owner, had been the last one to leave the business that night. Before leaving, he had locked the door and turned on the burglar alarm. He locks the business every day. During the early morning hours, Officer Douglas Duke went to the business within one minute after being called about the burglar alarm.
Officer Duke testified the area is in a remote part of Westwego where normally nothing occurs after business hours. He found one subject on the road outside of *152 the business standing next to a car. There was no one else near the man. When Officer Duke questioned him, the man appeared nervous. He stuttered when he spoke, he repeatedly looked over his shoulder, and would not look the officer in the eye. Officer Duke and other officers at the scene detained the man.
Officer Duke saw a second man (Darryl Reid) inside the business' locked fence. The man was leaving the warehouse carrying a box. He then left the premises through a hole that had been cut in the fence. The officers secured that man. Officer Duke and the other officers entered the fenced area to search for additional perpetrators. Within about five minutes, Officer Duke saw defendant hiding under a tractor-trailer that was parked in a field about 20 feet away from the fence.
Officer Duke ordered defendant to emerge from under the truck and to show his hands. Defendant at first refused to comply. He then tried to crawl out and run away from the officers. Officer Duke tasered defendant, who then fell to the ground. The officers were able to secure defendant after a struggle.
Detective Todd Rivere testified that he responded to the burglary call at the shrimp packing company. Detective Rivere described the area around the business as a desolate place near Bayou Segnette comprised mostly of businesses. When he arrived there, other officers already had three suspects in custody. Detective Rivere testified that Darryl Reid admitted his involvement in the burglary.
Detective Rivere observed that the hole in the company's fence was approximately three feet and large enough for a person to go through. Lai met with Detective Rivere at the scene. He told Detective Rivere the hole had not been there earlier in the day. According to Detective Rivere, the fence's gate was locked, so the only way onto the premises would have been through the hole. Boxes of stolen seafood were stacked near the hole.
The detective located a point of entry into the warehouse building  a metal roll-up door whose lock had been "defeated." The door was some distance away from the hole in the fence. That door led into the warehouse, where the lock on a large walk-in freezer had been "defeated." The freezer door was slightly ajar, and the "locking hasp" appeared to have been cut by some sort of tool. The freezer contained boxes of seafood with markings identical to the boxes found near the hole in the fence. Several boxes were missing from the freezer. Detective Rivere found a hacksaw on the premises and a pair of bolt cutters near the hole in the fence.
The parties stipulated that Louise Waltzer, an expert forensic examiner for the state, examined the bolt cutter and the clasp from the fence and these were inconclusive as to whether the bolt cutter was the item that cut the fence.
Detective Rivere testified that defendant gave written consent to a search of his car. No evidence was recovered from the car.
Mr. Lai testified that his company buys fresh shrimp, processes it, and sells it to distributors. He stores the shrimp in a freezer. There is a six-foot fence around the warehouse, and the only way to enter is through a gate that is kept locked when the business is closed. Lai said that at any given time, 4.5 million dollars worth of seafood is stored there. There were six boxes of seafood missing after the break-in. Their approximate value was $1,060.00. He did not give anyone permission to cut a hole in his fence or to take the boxes of seafood.
Mr. Arceneaux testified that earlier on the day of his arrest, he was in Covington with his fiancée. His fiancée's cousin introduced *153 him to Darryl Reid, who needed a ride to Westwego. Defendant agreed to drive Reid there in his fiancée's car. When they arrived in Westwego they went to the home of Reid's son. Reid then said he wanted to go to his shrimping boat to get some clothes. Defendant gave Reid and a second man, "Lethan," a ride to where the boat was docked. According to defendant, none of them talked about committing a burglary, and they did not have bolt cutters or any other tools with them.
Mr. Arceneaux testified that he parked his fiancée's car and the two passengers exited. He did not see where they went. Defendant had been drinking all day, and he dozed off in the car. When he awoke he saw a police car approaching. He did not want to come in contact with officers, as he had open traffic attachments. Defendant exited his car, went through the hole in the fence, and hid under the truck. When he went through the hole he did not see boxes there. The police officers found him and asked him to get out from under the truck. As he complied with their request, his foot became stuck under the truck. One of the officers hit him with a taser, and he fell on his stomach.
Defendant said he attempted to locate Reid prior to trial to have him testify on his behalf, but he learned that Reid had died as a result of a prison fight.
On cross-examination, defendant admitted to numerous prior convictions dating back to 1993. Those convictions included simple burglary, felony theft, battery on a police officer, possession of marijuana, and third offence operating a vehicle while intoxicated.
In reviewing the sufficiency of evidence, an appellate court must determine whether the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citation omitted); State v. Tilley, 99-0569 (La.7/6/00), 767 So.2d 6, 24, cert. denied, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001) (citations omitted).
Under La.R.S. 15:438, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This requirement does not establish a standard separate from the Jackson standard, but provides a helpful methodology for determining the existence of reasonable doubt. State v. Arceneaux, 05-338 (La.App. 5 Cir. 12/27/05), 930 So.2d 44, 48. In assessing other possible hypotheses in circumstantial evidence cases, the appellate court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020, cert. denied, 513 U.S. 975, 115 S.Ct. 450, 130 L.Ed.2d 359 (1994) (citations omitted). Instead, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under the Jackson standard. Id.
Mr. Arceneaux was convicted of simple burglary, which is defined in La.R.S. 14:62 as "the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable . . . with the intent to commit a felony or any theft therein[.]" Specific intent is required under La.R.S. 14:62, and it may be inferred from the circumstances and actions of the accused. State v. Smith, 02-1018 (La.App. 5 Cir. 3/11/03), 844 So.2d 119, 125. Specific *154 criminal intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10(1). Whether a criminal defendant possessed the requisite intent is for the trier of fact, and a review of the correctness of that determination is guided by the Jackson standard. State v. Tran, 97-640 (La.App. 5 Cir. 3/11/98), 709 So.2d 311, 317.
Defendant contends the state presented no evidence that he either entered the business or that he had the intent to commit a theft. He argues the state failed to prove he was in possession of any of the stolen items or the burglary tools found at the scene.
As defendant points out, the state did not provide proof that he ever entered the packing warehouse. But one may be a principal to a burglary without having personally entered the burglarized structure. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 931, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Arceneaux, 930 So.2d at 49. See also State v. McFarland, 07-26 (La.5/29/07), 960 So.2d 1142, 1147, writ denied, 07-1463 (La.1/7/08), 973 So.2d 731. In such an instance the State must prove the defendant was concerned in the commission of the crime, aided or abetted in its commission, or directly or indirectly counseled another to commit the crime as a principal. La.R.S. 14:24; State v. Arceneaux, 930 So.2d at 49.
Mere presence at the scene of a crime does not make one a principal to the crime. Arceneaux, 930 So.2d at 49. But "`[i]t is sufficient encouragement that the accomplice is standing by at the scene of the crime ready to give some aid if needed, although in such a case it is necessary that the principal actually be aware of the accomplice's intention.'" State v. Anderson, 97-1301 (La.2/6/98), 707 So.2d 1223, 1225 (per curiam) (quoting 2 W. LaFave, A. Scott, Substantive Criminal Law, § 6.7, p. 138 (West 1996).
The record contains evidence which, viewed in the light most favorable to the prosecution, supports the judge's finding that defendant was guilty, beyond a reasonable doubt, of being a principal in the simple burglary of the business and that defendant had the requisite intent to commit the offense. Jackson v. Virginia, supra.
By the officers' accounts, the company was located in a part of Westwego that is normally desolate after business hours. The business was closed and locked at the time. Defendant's car was parked next to the business' fence. Officers arrived at the scene within a minute of receiving the burglar alarm call to find one subject acting as a lookout, a second subject carrying boxes of merchandise out of the warehouse, and defendant hiding under a truck parked nearby. Reid, who was caught carrying a box of shrimp from the warehouse, admitted to the officers that he had burglarized the business.
The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness. State v. Brown, 02-1922 (La.App. 5 Cir. 5/20/03), 846 So.2d 715, 721. The judge clearly found defendant's explanation for his presence at the scene  that he was assisting Reid in getting some clothes from Reid's boat  to be less than credible.
Mr. Arceneaux admitted at trial that he had prior convictions for theft and burglary. Defendant also admitted that he drove Darryl Reid and the man he knew as Lethan to the scene. Defendant testified he did not see where Reid went after he *155 left the car. He further testified that he himself never went on Reid's supposed boat. Defendant explained that he only went through the hole in the fence in order to hide so officers would not arrest him on existing attachments. But he could not explain why he did not flee instead up the road in the other direction or hide in Reid's boat in order to avoid apprehension. Defendant testified that he went through the hole in the fence two minutes before the officers arrived on the premises, and that he did not see any shrimp boxes stacked next to the hole. But the officers testified there were several boxes next to the hole when they arrived at the scene.
Defendant's efforts to conceal himself from the officers and to avoid apprehension were relevant to show defendant's intent to commit a burglary. See State v. Brown, 846 So.2d at 722, in which the Louisiana Supreme Court stated (citing State v. Wilkerson, 403 So.2d 652 (La. 1981), that "evidence of flight, concealment, and attempt to avoid apprehension is relevant and admissible to prove consciousness of guilt from which the factfinder may infer guilt." See also State v. Williams, 01-644 (La.App. 5 Cir. 11/27/01), 802 So.2d 909, 914 ("Evidence of flight, concealment and attempt to avoid apprehension is relevant. It indicates consciousness of guilt.").
Based on the foregoing, this assignment of error lacks merit.
Error Patent
The record was reviewed for errors patent. LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990). The review reveals one error patent in this case that requires corrective action.
At the sentencing hearing, the trial court failed to properly advise defendant of the two-year prescriptive period for applying for post-conviction relief in accordance with LSA-C.Cr.P. art. 930.8 because the advisal was incomplete. According to the waiver form, defendant was advised in writing that he had two years from "today's date [convict/sent.] to seek post-conviction relief." The word, "conviction/sent" was a handwritten addition to the form.
At the time of sentencing, the judge stated, "I would like to inform the Defendant he has thirty days from today's date to appeal this conviction, and two years from the date, conviction, and sentencing to seek post-conviction relief." Sometime later, the judge said, "Article 930.8 of the Code of Criminal Procedure provides that, except in certain limited circumstances, applications for post-conviction relief must be filed within two years after your sentence becomes final." Article 930.8 actually gives a defendant two years "after the judgment of conviction and sentence has become final" in which to file an application for post-conviction relief.
This Court has held that the failure to advise defendant that the prescriptive period runs from the time his conviction and sentence become final renders the advisal incomplete. State v. Lauff, 06-717 (La. App. 5 Cir. 2/13/07), 953 So.2d 813, 821 (citations omitted). Therefore, we remand the case and order the trial court to correctly inform defendant of the proper prescriptive period for filing for post-conviction relief by sending written notice of such to defendant within ten (10) days of the rendition of this opinion, and to file written proof in the record that defendant received the notice. Accord, State v. Lauff, 953 So.2d at 821.
DECREE
For the reasons set forth above, we affirm Mr. Arceneaux's conviction and sentence. We remand the case and order the *156 trial court to send defendant written notice of the proper prescriptive period for filing for post-conviction relief.
CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] Darryl L. Reid was charged as a codefendant. This appeal pertains only to Dale Arceneaux.
[2] Defendant retained new counsel for his sentencing hearing,
[3] The date was indefinite both in the indictment and the evidence that the state presented during the trial. The bill charged defendant with committing the offense "on or about April 19, 2005." The testimony and the evidence adduced at trial referred to the date as April 19, 21, or 25, 2005. It is clear from the testimony and evidence adduced at trial that the offense at issue occurred within a reasonable time of the date specified  "on or about April 19, 2005. The date of the offense is not crucial to the elements of the charged offense, La.R.S. 14:62. See, U.S. v. Urick, 431 F.3d 300, 303 (8th Cir.2005), wherein the court explained: "The law is clear that the use of the term `on or about' in an indictment `relieves the government of proving that the crime charged occurred on a specific date, so long as it occurred within a reasonable time of the date specified.' (quoting United States v. Duke, 940 F.2d 1113, 1120 (8th Cir.1991)).