CLARENCE E. MCMANUS, Judge.
| gDefendant appeals his conviction and sentence for simple burglary. For the following reasons, we affirm defendant’s conviction and sentence.

STATEMENT OF THE CASE

On October 9, 2007, the Jefferson Parish District Attorney filed a bill of information that charged defendant, Brandon M. Na-quin, with simple burglary in violation of *68 LSA-R.S. 14:62. Defendant pled not guilty at his arraignment on October 23, 2007. Defendant proceeded to trial on November 10, 2009. The following testimony was elicited at trial.
Keith Jones testified that on September 7, 2007, he went to work in his Nissan Maxima and left his vehicle in a parking lot because his employer, Campo’s Medical Pharmacy Company, provided him with a company van for his deliveries. Before leaving, he locked his vehicle. At approximately 11:20 p.m., when he returned from making his deliveries and turned off of Mounes Street onto Distributor Row in Harahan, he noticed that the lights on his vehicle were flashing and the dome light in his vehicle was on. He then observed a young, white male in the backseat of his vehicle, leaning over to the front with an object in his hand and trying to break the facing from around his radio.
laMr. Jones testified that the subject then jumped out of his vehicle and ran across the street. Mr. Jones pursued him in the van. When defendant ran toward some buildings, Mr. Jones went around the back on Elmwood Parkway. He caught up with the subject as he was attempting to get into an orange, low-rider truck. However, when the subject noticed the van, he ran off again. Mr. Jones exited the van, went to the door of the orange truck, and had a conversation with the driver of the truck. Mr. Jones agreed that the driver said he did not know the identity of the person trying to get into the truck. After realizing he would not catch the subject, Mr. Jones returned to his vehicle and called 9-1-1. He noticed that the door hinge on his vehicle was “messed up” and the back vent window was gone. He also noticed a wallet by the back door that was about two and one-half feet away from the vehicle. According to Mr. Jones, he did not pick up the wallet or look into it. He also noticed that the interior of the vehicle was damaged. He explained that the bottom part of the facing around the radio was broken and it appeared from the side area that the subject was trying to pry it apart to get the radio out.
At 11:33 p.m., Deputy Ronald David Ray, Jr. of the Jefferson Parish Sheriffs Office received the dispatch in reference to a vehicle burglary and responded to 660 Distributors Row. As he arrived, he noticed a black male trying to flag him down near a vehicle with its hazard flashers on. The deputy inspected the vehicle and noticed pry marks and that the door was damaged. He explained that the handle was damaged and the rear vent window on that same side was gone. He also noticed that inside of the vehicle the mounting bracket in the center console around the stereo was damaged. He recovered a wallet that was on the ground a short distance from the vehicle. Deputy Ray picked up the wallet and inspected its contents. The wallet contained a Louisiana driver’s license with a photograph, a social security card, a Chase Visa debit card, a certification card, ajochase Visa rewards card, and a health insurance card, all of which reflected defendant’s name. Deputy Ray testified that defendant’s wallet was in his possession at 11:40 p.m.
According to Mr. Jones, the officer did not show him the wallet. Mr. Jones told the police what he had observed. Deputy Ray then learned from headquarters that someone called to report a robbery at gunpoint. The subject, who was named “Brandon” was at the Wal-Mart on Jefferson Highway near Clearview. Because of additional information provided in the dispatch, Deputy Ray responded to the Wal-Mart location, where defendant and a juvenile subject named Russell Gautro were present. Defendant explained to Deputy Ray that he and Gautro left the movies *69 and were approached by a black male who had a gun and demanded his wallet and the stereo in his vehicle. Defendant claimed his wallet was stolen. Deputy Ray testified that defendant and Gautro were unable to provide any details of the claimed robbery. Defendant did tell Deputy Ray that the robbery was about 15 minutes before he called the Sheriffs Office. Defendant called 9-1-1 at 12:25 a.m. As such, Deputy Ray concluded the robbery would have happened about 12:10 a.m. Deputy Ray explained that although defendant said his wallet was stolen at this time, he had defendant’s wallet in his possession since 11:40 p.m.
Mr. Jones later went to the Wal-Mart parking lot in a patrol car to see if he recognized the two subjects. Upon his arrival, he recognized the orange truck. He was able to identify defendant as the person who robbed him and also identified the driver of the orange truck. He testified that he was 100 percent certain of the identifications and that this was the truck he saw defendant run to. After defendant was positively identified, he was advised of his Miranda[1] rights and was arrested. |aGautro was arrested as well. Mr. Jones also identified defendant at trial as the person that was trying to steal his stereo.
Aischa Prudhomme, an expert in fingerprint examination, testified that a fingerprint recovered from the vehicle matched the right index finger of Louis Morris. Other fingerprints were insufficient for identification purposes. Mr. Jones testified that Louis Morris was a co-worker and friend of his who had previously been in his car on several occasions with his permission, including two days prior to the incident.
Defendant, his mother, and Russell Gau-tro testified as defense witnesses. Beverly Naquin, defendant’s mother, testified that she received a call from defendant between 11:00 and 12:00 from the Wal-Mart parking lot on the night he was arrested. She testified that defendant was panicking and crying, stating that he had just been “held up” at gunpoint. She told defendant to stay where he was and she would meet him. She also told him to call 9-1-1. She said it took her ten minutes to get there and she arrived around 11:30 p.m. She testified that when she arrived the officers were already there. She examined defendant’s truck and noticed that the stereo system and the speaker systems were missing. She testified that the dashboard was “tore up pretty bad,” and defendant’s cell phone and wallet were missing. She explained that the police’s attitude toward her and defendant was that defendant was a “known thief.”
Gautro testified that he was 16-years old on September 7, 2007, and on that day he “hung around” with defendant before they went to see a movie together. He testified that after the movie he threw his ticket stub away. He explained that about five minutes after they left the movie, they were pulled over by a car and then robbed by Mr. Jones and three other men in another vehicle. He denied that the robber had a gun. He said the robber walked up to the driver’s side window | fiand said for them to get out. Then another car pulled up behind them. He testified that two cell phones, speakers, and a wallet were taken out of defendant’s truck. Gau-tro stated that after the robbery defendant called his mother. Gautro said defendant used his cell phone to call his mother and then they went to Wal-Mart and called the police.
Gautro testified that when Mr. Jones arrived he and defendant were in police *70 units. Gautro said he drove defendant’s truck that night, but before they went to see the movie. He also stated that defendant never left him alone in the vehicle while he was driving. He denied that defendant tried to get into the truck and then ran off. He testified that defendant could not have burglarized the vehicle at 11:30 p.m. without his knowledge. He agreed that he went to juvenile court for the incident and was “convicted” of accessory after the fact to simple burglary.
Defendant testified that they left the movie and were driving down Elmwood Parkway when they were robbed by three black males. He testified that a van pulled up and they were told to get out of the truck. He said two other vehicles pulled up behind them. He said they took his speaker box, his phones, and his wallet that was in the center console. Defendant testified that he was robbed between 11:20 and 11:30 on Distributors Row and Pepsi Street. Defendant said he called his mom and then immediately called the police. He told them his name, that he was robbed, and that he was at Wal-Mart. Defendant testified that the police arrived about five to ten minutes after he called them, if that long. He said he requested that the police fingerprint his truck. Defendant denied breaking into Mr. Jones’ vehicle. He admitted that he was convicted of three counts of simple burglary in St. Charles Parish on September 19, 2006.
A unanimous, six-person jury found him guilty as charged and on November 19, 2009, defendant was sentenced to ten years imprisonment at hard labor. On 17this same date, defendant filed a motion for appeal, and the appeal was granted on December 3, 2009.
Thereafter, on December 10, 2009, the State filed a multiple offender bill of information, alleging that defendant was a second felony offender. On January 14, 2010, defendant admitted the allegations of the multiple bill. His original sentence was vacated, and he was sentenced to 20 years imprisonment at hard labor without benefit of probation or suspension of sentence. This appeal follows.

ASSIGNMENT OF ERROR NUMBER ONE

Defendant argues on appeal that the evidence was insufficient to support this conviction when not all reasonable hypotheses of innocent activity were eliminated. Defendant argues that his theory that Mr. Jones robbed defendant was plausible. He argues that facts presented at trial supported his claim and explained that' he could have been wrong about precise times because he was a victim of a robbery. He adds that his testimony was essentially the same as Gautro’s testimony. He contends that defendant called the police instead of running, and his fingerprints were not found in the burglarized car. He also notes that no effort was made to check his truck for fingerprints. Defendant argues that the State failed to eliminate every reasonable hypothesis of innocent activity and failed to establish beyond a reasonable doubt that he burglarized Mr. Jones’ car.
The State responds that after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The State contends that Mr. Jones testified that defendant was in his vehicle, without his permission, and was trying to break the facing around the radio. The State further contends that it proved the identity of the perpetrator and negated any reasonable probability of misidentification. Finally, the State contends that the jury found the testimony of |sthe State witnesses more credible than that of the defense witnesses. The State explains that *71 the jury would have considered as highly suspect that the defendant and Gautro were unable to offer anything more than a vague account of their whereabouts at the time of the charged offense and were unable to provide specific details of the alleged robbery. The State suggests that the defendant’s story was especially problematic for him at trial given that his initial report to police placed the timing of the robbery where his wallet was taken as having occurred after the police had already recovered defendant’s wallet from the scene of the burglary. The State notes that the testimony of the defense witnesses at trial were inconsistent with prior statements and one another’s statements on key points, such as the existence of a weapon during the alleged robbery and the number of persons reportedly involved.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See State v. Ortiz, 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Bailey, 04-85, p. 4 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005) (quotation omitted). Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841, p. 7 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.
“Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the ^existence of other connected facts.” State v. Kempton, 01-572, p. 7 (La.App. 5 Cir. 12/12/01), 806 So.2d 718, 722. “The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” LSA-R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must evaluate the evidence in a light most favorable to the State and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83 (quotation omitted).
Defendant was convicted of simple burglary, which is defined in LSA-R.S. 14:62(A) as “the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60 [aggravated burglary].” Specific intent is required under LSA-R.S. 14:62, and it may be inferred from the circumstances and actions of the accused. State v. Arceneaux, 07-692, pp. 10-11 (La.App. 5 Cir. 3/25/08), 983 So.2d 148, 153, writ denied, 08-0892 (La.11/10/08), 996 So.2d 1067. Specific criminal intent is defined as “ ‘that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.’ ” Arceneaux, 07-692 at 11, 983 So.2d at 153-54 (quoting LSA-R.S. 14:10(1)). Whether a criminal defendant possessed the requisite intent is for the *72 trier of fact, and a review of the correctness of that determination is guided by the Jackson standard. Arceneaux, 07-692 at 11, 983 So.2d at 154.
| mAs such, to convict the defendant, the State was required to prove beyond a reasonable doubt that defendant entered the vehicle without authorization and had the specific intent to commit a felony or theft therein. See State v. Ewens, 98-1096, p. 5 (La.App. 5 Cir. 3/30/99), 735 So.2d 89, 93, writ denied, 99-1218 (La.10/8/99), 750 So.2d 179. In addition to proving the statutory elements of the charged offense at trial, the State is required to prove defendant’s identity as the perpetrator. Where the key issue is identification, the State must negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Ingram, 04-551, p. 6 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926. Positive identification by only one witness is sufficient to support a conviction. State v. Weary, 03-3067, p. 18 (La.4/24/06), 931 So.2d 297, 311, cert. denied, 549 U.S. 1062, 127 S.Ct. 682, 166 L.Ed.2d 531 (2006); State v. Williams, 02-645, p. 10 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 503, writ denied, 02-3182 (La.4/25/03), 842 So.2d 398.
After viewing the evidence in the light most favorable to the State, we find that any rational trier of fact could have found that defendant committed simple burglary of Mr. Jones’ vehicle beyond a reasonable doubt. The State presented evidence of the elements of the offense as well as evidence that defendant was the person who committed the offense.
Mr. Jones testified that he locked his vehicle before leaving it in the parking lot. Mr. Jones testified that at approximately 11:20 p.m. when he returned he noticed the lights on his vehicle were flashing and the dome light in his vehicle was on. He then observed defendant inside of his vehicle with an object in his hand, trying to break the facing from around his radio. The State presented sufficient evidence of intent by demonstrating the damage caused to the vehicle. Testimony established there was damage to the interior of Mr. Jones’ vehicle |naround the radio and to the exterior of the vehicle as well. The door hinge was “messed up” and the back vent window was gone. Deputy Ray also testified regarding the pry marks and damage to the vehicle. Mr. Jones denied giving defendant permission to enter his vehicle.
According to Mr. Jones, he was about ten to fifteen feet from the vehicle when he first observed defendant inside his vehicle. Mr. Jones testified that defendant looked up and he was able to get a good look at his face. At trial, he testified that he was 100 percent confident that the person in his vehicle that was trying to steal his stereo was defendant.
Defendant’s wallet was left about two and one-half feet from Mr. Jones’ vehicle. Defendant admitted that the driver’s license, the social security card, and the other cards that were shown to him at trial were from his wallet. Mr. Jones observed defendant trying to get into an orange, low-rider truck. This truck, which was identified by Mr. Jones, was registered to defendant. Mr. Jones later went to the Wal-Mart parking and recognized the orange truck. He identified defendant as the person who had robbed him. He also identified the driver of the orange truck. He testified that he was 100 percent certain of the identifications and that this was the truck he saw defendant run to.
Although defendant and Gautro claimed they were robbed, they were not able to provide details of the robbery and their stories changed. Additionally, the timing of *73 when defendant claims his wallet was stolen appears questionable.
The dispatch for the vehicle burglary was received at 11:33 p.m., and Deputy Ray had defendant’s wallet in his possession at 11:40 p.m. However, defendant told Deputy Ray that the robbery was about fifteen minutes before he called the Sheriffs Office and was certain about that answer. Defendant called 9-1-1 at 12:25 a.m. As such, Deputy Ray concluded the robbery would have 112happened about 12:10 a.m. Deputy Ray testified that defendant could not explain how his wallet was in the deputy’s possession since 11:40 p.m. Defendant attempted to change the timing of the robbery at trial when he testified that he was robbed between 11:20 and 11:30 p.m. However, defendant still testified that the police arrived about five to ten minutes after he called them, if that long.
Deputy Ray testified that although defendant and Gautro’s stories were consistent, neither could provide any details of the robbery. Defendant did not know the name of the movie, the time the movie started or ended, or which way the black male ran after robbing him. He also could not give the exact location of the robbery and did not have any ticket stubs from the movie. Deputy Ray agreed that in his experience, often victims of traumatic events had difficulties in estimating times and distances after the events. However, he testified that defendant and Gautro did not appear traumatized.
Deputy Ray learned from headquarters that someone called to report a robbery at gunpoint. Defendant’s mother also testified that defendant told her when he called that he was robbed at gunpoint. However, Gautro testified that the robber did not have a gun. Gautro testified after he and defendant left the movie, they were pulled over by a car and then robbed by Mr. Jones and three other men who were in another vehicle. Defendant testified that he and Gautro were robbed by three black males. He testified that a van pulled up and they were told to get out of the truck. He said two other vehicles pulled up behind them. He said they took his speaker box, his phones, and his wallet that was in the center console. However, it appears that Deputy Ray was told that there was one black male robber.
Defendant’s mother testified that defendant called her from the Wal-Mart parking lot. However, Gautro denied that they were already at Wal-Mart when 113defendant called his mother. Further, as previously mentioned, defendant called 9-1-1 at 12:25 a.m. However, defendant’s mother said it took her ten minutes to get to the parking lot and she arrived around 11:30 p.m.
Gautro testified that defendant never left him alone in the vehicle while he was driving. He denied that defendant tried to get into the truck and then ran off. He testified that defendant could not have burglarized the vehicle at 11:30 p.m. without his knowledge. Further, defendant denied breaking into Mr. Jones’ vehicle. However, based on the verdict, the jury did not believe this testimony.
The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. State v. Jones, 08-20, p. 7 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. The trier of fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. Id. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. Id.
*74 The jury was presented with all of the evidence, and it appears the jury rejected defendant’s theory that Mr. Jones was the person who robbed him. After viewing the evidence in the light most favorable to the State, we find any rational trier of fact could have found that defendant committed simple burglary of Mr. Jones’ vehicle beyond a reasonable doubt. As such, we affirm defendant’s conviction.
| uERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). We note one error patent for correction.
We find there are discrepancies in the commitments and transcripts regarding the advisal of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8. Both the commitment for the underlying conviction and the multiple bill commitment reflect proper advisals pursuant to LSA-C.Cr.P. art. 930.8. However, the transcripts reflect incomplete advisals because the trial judge advised that defendant had “two years to seek post-conviction relief.” The waiver of rights form for the multiple bill contains no advisal. The transcript prevails when there is a discrepancy between the commitment and the transcript. State v. Lynch, 441 So.2d 732, 734 (La.1983).
This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final is incomplete. State v. Grant, 04-341, p. 5 (La.App. 5 Cir. 10/26/04), 887 So.2d 596, 598. Therefore, we advise defendant, by way of this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of LSA-C.Cr.P. arts. 914 or 922.
Accordingly, defendant’s conviction and sentence for simple burglary are affirmed.

AFFIRMED.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).