ROBERTA. CHAISSON, Judge.
12Defendant, Robert Bychurch, Jr., appeals his convictions and sentences for simple burglary and illegal possession of stolen things. For the reasons that follow, we affirm his convictions and sentences; however, we remand the matter for correction of an error patent noted herein.

PROCEDURAL HISTORY

The Jefferson Parish District Attorney filed a bill of information charging defendant with simple burglary, in violation of LSA-R.S. 14:62 (count one), and illegal possession of stolen things valued at greater than $1,500.00, in violation of LSA-R.S. 14:69 (count two). Defendant pled not guilty and thereafter proceeded |sto trial before a six-person jury. After considering the evidence presented, the jury, on October 22, 2013, found defendant guilty as charged on both counts.
On October 31, 2013, the trial court sentenced defendant to ten years on count one and five years on count two, to run concurrently. The State thereafter filed a bill of information pursuant to LSA-R.S. 15:529.1, alleging defendant to be a second felony offender as to the simple burglary conviction (count one). After being advised of his rights, defendant admitted to the allegations in the multiple offender bill. The trial court then vacated defendant’s original sentence on count one and imposed an enhanced sentence of fourteen years in the Department of Corrections without benefit of probation or suspension of sentence, to run concurrently with any other sentence being served.
Defendant now appeals, challenging the sufficiency of the evidence used to convict him of simple burglary.

FACTS

This case involves the burglary of a storage unit at A1 Lock ’n Leave It located on the west bank of Jefferson Parish. At the time of the offense, the victim, Robby Tingle, Sr., and defendant both leased units from this facility. Mr. Tingle’s storage unit number was F-12, and defendant’s storage unit number was F-ll. According to Jane Buchert, the manager of the storage facility, these two units were “right next to each other.”
*666 In December of 2012, sometime between Christmas and New Year’s, Mr. Tingle went to his storage unit to retrieve an item and immediately noticed that the lock on the unit door was not his. Mr. Tingle proceeded to the office at the storage facility, advised an employee of the situation, and requested that the lock on his unit be cut. After the lock was cut, Mr. Tingle raised the door on his storage unit and saw that the unit had been burglarized. He noticed that numerous items had |4been taken, including an all-terrain vehicle (ATV) owned by his son, Robby Tingle, Jr., a motorcycle, a pressure washer, a generator, a torch kit, and some hand tools.
The police were called, and Deputy Jeffrey Jobin of the Jefferson Parish Sheriffs Office responded to the scene. The officer made a report of the incident and entered the ATV and the motorcycle into the NCIC database. At this time, Mr. Tingle was also shown the video from the security cameras located near his storage unit. In the video, Mr. Tingle observed a truck pull up to his storage unit. He then saw a person exit the truck, walk directly to his unit, and open the lock without any bolt cutters. That individual then pulled the ramps out of the back of the trailer attached to the truck and rolled the ATV into the trailer. Next, the individual took a motorcycle, a table saw, and other items from Mr. Tingle’s storage unit and loaded the items into the trailer. At trial, Mr. Tingle testified that he did not recognize the truck or trailer as belonging to anyone that he knew, nor did he give anyone permission to enter his storage unit and remove items.
About a month after the initial report of the incident, Deputy Jobin assisted on a traffic stop of an ATV being driven by defendant. Deputy Jobin recognized the Suzuki ATV as similar to one that had recently been reported stolen. When Deputy Jobin asked defendant about his ownership of the vehicle, defendant claimed that he had owned it for several months and bought it from an individual in Marre-ro for $1,500.00. Defendant and the female passenger on the ATV, Meredith Jones, were given the opportunity to produce documents for the ATV. Although defendant had the key to the vehicle, he was unable to provide the officer | swith the registration, bill of sale, or title for the vehicle.[1] In addition, defendant was unable to show the officer the location of the VIN number.
Deputy Jobin confirmed, by looking at his previous report, that a similar ATV had, in fact, been reported as stolen. Detective Todd Giacona of the burglary and theft division of the Jefferson Parish Sheriff’s Office was called to the scene of the stop to investigate and to interview defendant. In addition, the officer contacted the owner of the ATV, Robby Tingle, Jr., and asked him to come to the scene of the traffic stop. Once he arrived, Mr. Tingle, Jr., presented pictures on his phone, which showed additions he had made to the ATV. In addition to these special features, Mr. Tingle, Jr., recognized the ATV as his because of the missing tail light, the missing radiator reservoir, and the black grab bar that he had broken and had welded back together. Mr. Tingle, Jr., also showed the officers the location of the VIN number, at which time the officers observed that the spot looked like it had been “freshly grounded with a grinder, and it had spray paint.” Feeling confident that Mr. Tingle, Jr., was the owner of the *667 ATV, the officers returned the vehicle to him.[2]
The officers then took defendant and his girlfriend, Ms. Jones,[3] to the detective bureau. In addition, Detective Giacona asked Michael Laurent, the person who initially called the police about defendant riding the ATV, to meet him at the detective bureau. Michael Laurent told the police that he believed the ATV may have been stolen because defendant had previously contacted him to see if he was interested in purchasing an ATV and a generator.
IfiAt the detective bureau, after being advised of his rights, defendant signed a waiver of rights form and gave the officers a statement. In his statement, defendant admitted that he owned a “gold F150 crew cab four door” truck with custom wheels and also owned a white trailer that had a fender missing. Defendant claimed that he bought the ATV from an individual named Michael Trahan,[4] who was staying “with a girl named Claudia.” According to defendant, Michael Trahan took him to a shed at Claudia’s house to get the items. Defendant gave Mr. Trahan $1,500.00, and in return, got an ATV, a generator, an acetylene tank, a helmet, goggles, and gloves.
In addition to giving a statement, defendant signed a consent form giving the officers permission to search his residence. During the subsequent search, the officers recovered a helmet and goggles, which Mr. Tingle, Jr., later identified as those he kept with the ATV. The officers also searched defendant’s garage and recovered a generator, a table saw, a torch set, a pressure washer, and other items that belonged to Mr. Tingle, Sr. According to Detective Giacona, Ms. Jones claimed that she was able to provide receipts for the recovered items; however, none matched the property that was the subject of the theft. Also, while executing the search warrant, the officers observed a white trailer with a missing fender on the driver’s side in defendant’s driveway that matched the trailer observed in the surveillance video from the storage unit.
Several other witnesses testified at trial. Alfred Ravy testified that while he was doing some work for Claudia Crabtree, he overheard defendant tell Ms. Crabtree that he had a motorcycle that he wanted to sell. Mr. Rav/s son wanted a bike, so he told defendant that he was interested in buying it. When Mr. Ravy finished working at Ms. Crabtree’s house, he went to defendant’s house, at which |7time defendant pulled the bike out of a big white trailer. Mr. Ravy bought the bike for $400.00 and claimed that defendant gave him a bill of sale for the bike. However, Mr. Ravy was unable to provide the police with any papers on the bike when his son, while riding the bike, was subsequently stopped by police. Mr. Ravy identified defendant in a photographic lineup as the individual who sold him the bike.
Claudia Crabtree testified and basically confirmed Mr. Rav^s testimony. According to Ms. Crabtree, defendant told her that he had a motorcycle for sale, but she was not interested in buying it. Further, Mr. Ravy was present at her house when the discussion about selling the motorcycle occurred; however, Ms. Crabtree denied *668 having any knowledge as to whether the actual sale took place later that day. During her testimony, Ms. Crabtree denied knowing anyone by the name of Michael Trahan and further denied that anyone by that name stayed at her house in December of 2012. She claimed, during cross-examination, that she tried to help locate Michael Trahan and referred defense counsel to someone named Scott who might be able to help him.
Michael Laurent testified that defendant approached him sometime in December and asked him if he wanted to buy an ATV.[5] According to Mr. Laurent, defendant told him that he had gotten the bike from a storage unit. Further, in his trial testimony, Mr. Laurent claimed that right before defendant showed up with the bike, defendant told Mr. Laurent, “I know where they got motorbikes, three wheelers and four wheelers at.” Defendant then asked Mr. Laurent if he wanted to make a “lick,” which means to “go steal something.” Mr. Laurent admitted, during his trial testimony, that he had not previously provided this information about | ¡/‘making a lick.” Mr. Laurent testified that he did not buy the bike because he thought it might possibly be stolen.
During his testimony, Mr. Laurent acknowledged that at some point during the month of December, the hitch on defendant’s truck was placed on Mr. Laurent’s truck, and the hitch was not removed from Mr. Laurent’s truck until sometime in January.
Defendant’s girlfriend, Meredith Jones, testified for the defense. She claimed that on December 28, 2012, at about 8:59 a.m., which was the date and time reflected on the surveillance video, she and defendant were at home sleeping. She further testified that defendant had purchased the ATV for $1,500.00 and that she and defendant had the owner’s manual and a bill of sale for the ATV. She further pointed out the differences between defendant’s truck and the truck in the surveillance video including the different rims and front grills. She also claimed that the truck in the photograph from the surveillance was missing a sticker on the front windshield and a toolbox. According to Ms. Jones, defendant did not have a hitch on his truck on December 23, 2012, because Mr. Laurent had it on his truck from the beginning of December until the end of January. In addition, Ms. Jones testified that defendant had numerous tools in their shed because he performed many types of work including renovations, plumbing, electrical, and flooring. She claimed to have receipts for all of the items purchased, including the pressure washer.
Robert Guesnon, an investigator, also testified for the defense. According to Mr. Guesnon, he was hired by defense counsel to try to locate someone named Michael Trahan, the person from whom defendant allegedly purchased the ATV. Through the course of his investigation, he discovered that “legally a Michael Trahan does not exist on paper.” However, he claimed that he “was able to locate a |9sub;ject who was identified as Michael Trahan.” Mr. Gues-non obtained a photograph of the person who was identified as Michael Trahan and identified this person as Scott Marcell.

SUFFICIENCY OF THE EVIDENCE

In his sole assignment of error, defendant challenges the sufficiency of the evidence used to convict him of simple burglary. Defendant contends that the *669 conviction was based solely on circumstantial evidence, and not all hypothesis of reasonable, innocent activity for the burglary was eliminated. To support his argument, defendant points to the differences between defendant’s truck and trailer and the truck and trailer shown in the surveillance video. Defendant also points out that at the time of the offense, Mr. Laurent had defendant’s trailer hitch on his truck, that some of the stolen items were not found in defendant’s possession, that Ms. Jones had receipts for some items in the garage, that Ms. Jones and defendant were asleep at home during the burglary, and that all of the items taken could not have fit into defendant’s trailer. Further, defendant contends that it was never excluded that Ms. Crabtree, Mr. Laurent, and Scott Marcell conspired to set up defendant.
The constitutional standard for testing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Micelotti, 07-808 (La.App. 5 Cir. 4/15/08), 984 So.2d 847, 851, writ denied, 08-950 (La.12/12/08), 997 So.2d 559. Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Naquin, 10-474 (La.App. 5 Cir. 2/15/11), 61 So.3d 67, 71.
|inWhen circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 provides that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must evaluate the evidence in a light most favorable to the State and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Naquin, 61 So.3d at 71.
In the present case, defendant was convicted of simple burglary. That offense is defined in LSA-R.S. 14:62 as “the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein ...”[6] Specific intent is required for a conviction for simple burglary, and it may be inferred from the circumstances and actions of the accused. State v. Austin, 12-629 (La.App. 5 Cir. 3/13/13), 113 So.3d 306, 312, writ denied, 13-0673 (La.10/25/13), 124 So.3d 1092. Specific criminal intent is defined as “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” LSA-R.S. 14:10(1).
Therefore, to convict the defendant, the State was required to prove beyond a reasonable doubt that defendant entered the structure without authorization and had the specific intent to commit a felony or *670 theft therein. State v. Naquin, 61 So.3d at 72.
|nIn the present case, Mr. Tingle testified that when he went to his storage unit to retrieve an item, he immediately-noticed that the lock on the unit was not his. Mr. Tingle had the lock removed and, upon opening the door, saw that numerous items had been taken, including an ATV, a motorcycle, a pressure washer, a generator, a torch kit, and some hand tools. Surveillance cameras around the storage unit showed a truck and a white enclosed trailer pull up to Mr. Tingle’s unit. The person driving the truck got out and immediately lowered the ramps from his trailer. The perpetrator rolled the ATV into the trailer and then loaded numerous other items into the trailer, including a motorcycle. At trial, Mr. Tingle testified this person must have known that his unit contained a motorcycle and an ATV, both of which would need a ramp to load them into the trailer. Mr. Tingle further testified that he did not give anyone permission to enter his storage unit or remove any items. Defendant was subsequently found in possession of the missing ATV and several other items taken from Mr. Tingle’s storage unit.
Moreover, when the police officers went to search defendant’s house pursuant to his consent, they observed a white trailer in his yard that matched the white trailer shown in the video from the storage unit. In particular, both defendant’s trailer and the trailer seen in the video were missing a fender on the driver’s side. Also, stickers on the trailer shown in the video matched the stickers defendant had on his trailer. Further, defendant’s truck, an F-150, matched the truck shown on the video from the surveillance unit. Defendant’s truck showed custom made rims, deflectors, shades, and tinted windows. The truck in the video had the same aftermarket additions.
In contrast to this testimony, the jury heard Ms. Jones’ testimony that defendant’s truck and trailer did not match the truck and trailer shown in the surveillance video, that Mr. Laurent had defendant’s hitch on his truck from early | ^December until the end of January, that defendant’s trailer could not have fit all the items, and that defendant was at home with her the morning of the offense. In addition, the jury was presented with defendant’s claim that he legally purchased the items from an individual named Michael Trahan, and that the individual identified as Michael Trahan was actually Scott Marcell.
After hearing all of the evidence presented, the jury obviously chose to accept the testimony of the State’s witnesses. The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. State v. Naquin, 61 So.3d at 73. The trier of fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness. State v. Austin, 113 So.3d at 312. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
After viewing the evidence in the light most favorable to the State, we find that a rational trier of fact could have found, beyond a reasonable doubt, that the evidence was sufficient to support defendant’s conviction for simple burglary. Accordingly, we find the arguments raised by defendant in this assigned error to be without merit.

*671
ERROR PATENT REVIEW

We have also reviewed the record for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 387 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review of the record in this case reveals an error in the “State of Louisiana Uniform Commitment Order.” The Uniform Commitment Order reflects the date of the offense was January 20, 2013; |1showever, the date of the offense was actually December 23, 2012. To ensure accuracy in the record, we remand this case for correction of the Uniform Commitment Order to reflect the correct date of the offense. We direct the trial court to make the appropriate entry on the Uniform Commitment Order reflecting this change and direct the Clerk of Court to transmit the corrected commitment to the officer in charge of the institution to which defendant has been sentenced and to the Department of Correction’s Legal Department. See LSA-C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-244 (La.9/15/06), 937 So.2d 846; State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14), 134 So.3d 36, 41.
For the reasons set forth herein, we affirm defendant’s convictions and sentences. The matter is remanded for correction of an error patent as noted herein.

CONVICTIONS AND SENTENCES AFFIRMED; COMMITMENT REMANDED FOR CORRECTION.

. At trial, Mr. Tingle testified that the keys for both the ATV and the motorcycle were kept in the storage unit with the vehicles.

. Mr. Tingle, Jr., testified that he bought the ATV from an individual in Texas for $2,500.00.

. At the scene of the stop, Ms. Jones gave a statement that defendant "had gotten the bike somewhere around Christmas, and he said he got it from some guy.”

.At trial, Detective Giacona testified that the police could not locate anyone matching Michael Trahan’s description or name.

. Mr. Laurent testified that he knows defendant because defendant’s aunt works for him and lives in one of his rental properties.

. LSA-R.S. 14:67(A) defines theft as "the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.”