MARION F. EDWARDS, Chief Judge.
Defendant/appellant, Alton Placide, Jr. (“Placide”), was charged with one count of aggravated burglary in violation of La. R.S. 14:60, and two counts of possession of a firearm after having been previously convicted of a felony in violation of La. R.S. 14:95.1. Pursuant to a motion to quash, the bill of information was later amended to charge him with one count of possession of a firearm by a convicted felon, along with the aggravated battery charge. Plac-ide pled not guilty, waived his right to a trial by jury, and proceeded with a bench trial. After taking the matter under advisement, on October 19, 2010, the trial court issued a written judgment, finding Placide not guilty of aggravated burglary (count one), but guilty of possession of a firearm by a convicted felon (count two).
Placide’s motion for new trial was denied and, subsequently, the trial court sentenced him on count two to ten years of imprisonment, with credit for time served, and without the benefit of probation, parole, or suspension of sentence. The court also imposed a fine of $1,000. Placide appeals.
Brenda Gueret (described by the trial court as mentally challenged) testified *396 that, on October 1, 2007, she got up because her dog was barking. When she looked out, she saw a man who pulled her out of the door and threw her on a bag of pecans. He told her to sit and be quiet, then took her back to her mother. His mother told him to take whatever he wanted, and the man searched the house for money. Brenda Gueret saw that he had a black gun and that the man took both money and her father’s pistol. She identified State’s Exhibit 9 as the gun he had with him. She was familiar with her father’s guns, but she never touched them. By the time of trial, her mother was deceased.
Detective Christie Murden testified that she investigated the aggravated burglary of the Gueret home. Upon entering the home, she saw the breakfast area where papers, a checkbook, and other things were spread out all over the floor. She also found a purse and its contents on the floor in another area. The rest of the house appeared to have been rummaged through. Detective Murden spoke with Brenda Gueret who told her a black male had a long shotgun type weapon with him and had also taken a gun from the residence. The officer learned that a Ruger 9mm weapon had been taken from the mother’s purse.
In connection with information developed in the investigation, Detective Mur-den then testified that she was involved in the execution of a search warrant at 519 Homewood Street in Reserve later that evening. In searching the bedroom, she lifted the mattress and found two weapons, a Mossberg shotgun and a Ruger 9mm. There were also many documents, such as phone bills, with the name of Alton Placide on them. The detective stated that a rental agreement indicated Placide used that address.
Errol Falterman testified that he owns the property at 519 Homewood, and, at the time of the incident, it was rented to a Daphne and Alton Placide. Mr. Falter-man identified the lease in court, which was signed by both Mr. and Mrs. Placide. Mr. Falterman dealt mostly with Mrs. Placide, and while he went to the home once or twice, he did not see Placide inside. However, he did see Placide outside. The lease is still in effect.
Michael Davis, retired from the St. John Parish Sheriffs Office, testified that he assisted in carrying out the search warrant at the Homewood Street address. He photographed and collected evidence, including a handgun and a shotgun, cell phones, etc. After photographing the evidence, he brought it into the office, processed it, and turned it over to Captain Harry Troxlair. Both weapons were recovered underneath the mattress in the bedroom. Mr. Davis identified the photos he took of the weapons.
Sergeant Kurt Tregre of the St. John Parish Sheriffs Office testified that he participated in the execution of a search warrant on a 2006 Nissan Maxima. He took a photo, which he identified, of a Comcast receipt that showed the name of Alton Placide at 519 Homewood Place in Reserve, as well as photos of Placide’s driver’s license with the same address and Social Security card. The original documents were later introduced into evidence.
Captain Troxlair, evidence custodian, testified that he obtained documents taken by Detective Davis from the Homewood Place address. These included a pay stub from Turner Industries in the name of Alton Placide, Sprint phone bills to Plac-ide, and his Social Security card. He further testified that, from the time he obtained the documentation from Davis to the time of trial, the evidence remained in the evidence locker under his custody and *397 control. Placide objected to this evidence (see below).
On appeal, Placide argues that he was denied his right to confront his accuser and cross examine the custodian of the records produced by the State and used to link him to the guns that he was convicted of constructively possessing from a particular bedroom. Specifically, he maintains that three Sprint phone bills and a Turner Industries pay stub bearing his name, and found in the master bedroom, were improperly admitted into evidence because they were not authenticated in violation of La. C.E. art. 901. Placide argues that, without producing a certified copy of the documents and/or the testimony of the custodian of the documents, the documents were unauthenticated inadmissible hearsay. He further asserts that he did not receive a fair trial because he was unable to confront the custodian of the records that the State used to connect him to the guns he was alleged to have constructively possessed. Finally, Placide maintains that a harmless error analysis reveals that the verdict was attributable to the error in admitting the unauthenticated documents because the only other evidence presented by the State linking him to the house in which the guns were found was the testimony of Falterman who “admitted that he usually dealt with the wife and never saw the defendant at the house.”
At trial, when the State attempted to introduce the documentation collected from Placide’s home and auto into evidence, defense counsel objected that the pay stub found in the home was not self-authenticating, nor was the social security card or the phone bills. Counsel argued these were hearsay evidence until authenticated by certified copies and/or the testimony of the custodian of the documents. Counsel also objected to the evidence found in the car, the Comcast bill and driver’s license, on similar grounds.
Despite overruling Placide’s objection, when the State moved to admit the subject documentation into evidence, the trial court declared that it was going to withhold its ruling on the admission of the evidence until the conclusion of trial.
Later, the court overruled the objections and ultimately found the documents admissible. Placide then raised a second objection as to the admission of the documents, arguing that, under Crawford v. Washington,[1] the State failed to present a witness to authenticate the documents, thus, depriving defendant of his Sixth Amendment right to cross-examine any such witnesses. Additionally, Placide argued that the State failed to show that the witnesses were unavailable to testify. He further argued that, even if the documents had been authenticated, they would still be inadmissible under Crawford because they are testimonial in nature. In response, the State again asserted that the exhibits were obtained pursuant to a validly issued search warrant and were not being offered to prove the accuracy of the information contained therein. Thus, the State maintained that it is left to the trier of fact to attribute the weight it deems appropriate to the documents admitted.
Because authentication of evidence is a condition precedent to admissibility, an exhibit that is not authenticated does not constitute competent evidence.[2] *398 Identification of an item of evidence establishes a proper foundation for its admission into evidence.[3] Identification can be either visual, as by a witness who identified the evidence in court, or by a chain of custody. It suffices if the foundation laid establishes that it is more probable than not that the object is one connected with the case.[4] Lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than the admissibility.[5]
Evidence must either be authenticated as provided in La. C.E. art. 901, or must be self-authenticating. See, La. C.E. art. 902. La. C.E. art. 901(B) includes a non-exclusive list of methods that may be utilized to authenticate evidence. Among the methods used to authenticate or identify a piece of evidence includes testimony of a witness with knowledge that a matter is what it is claimed to be, or through the use of distinctive characteristics such as the “appearance, contents, substance, internal patterns” taken in conjunction with the circumstances surrounding its discovery. La. C.E. art. 901(b)(1) and (4).
Here, the State presented ample evidence of the chain of custody through the testimony of Davis and Captain Troxlair. Detective Murden also testified regarding the recovery of the evidence. It is clear that the State in this case was not trying to admit the Sprint bills and Turner Industries pay stub to establish that Placide did, in fact, have a service contract with Sprint or was employed by Turner Industries. Rather, the State identified the documents collected pursuant to the execution of the search warrant to establish that Placide had mail with his name on it at the 519 Homewood residence. Additionally, upon overruling Placide’s objection pertaining to the subject documents, the trial court stated “it is understood that the purported items are being offered for the mere purpose of showing that is was found at the residence at 519 Homewood Place.” Once admissible, it is left to the trier of fact to attribute the weight to the documents that it deems appropriate.[6] We note that this was a bench trial; thus, the trial court’s understanding of the purpose of the offered evidence and the weight it may have attributed to the documents was less likely to be improperly applied than if presented to a jury. We find that La. C.E. art. 901 was fulfilled through the testimony of the officers verifying the chain of custody of the documentation collected pursuant to the search warrant executed at 519 Home-wood.
Placide also argues that he was denied a fair trial because he was unable to confront the custodian of records (i.e., a Sprint company representative) for the documents introduced by the State, citing Crawford v. Washington, supra. Traditionally, for purposes of the Confrontation Clause, all hearsay statements were admissible if (1) the declarant was unavailable to testify, and (2) the statement fell under a firmly rooted hearsay exception or bore particularized guarantees of trustworthiness.[7] But the United States Supreme Court has overruled Roberts insofar as it applies to out-of-court statements that are testimonial in nature, in Crawford v. Washington, supra. The Crawford court *399 drew a distinction between testimonial and non-testimonial hearsay and noted that non-testimonial hearsay is admissible where both prongs of Roberts are satisfied, regardless of whether the defendant has had a prior opportunity to cross-examine the declarant. The Crawford Court held that testimonial hearsay statements may be admitted as evidence at a criminal trial only when the declarant is unavailable to testify and the defendant has had a prior opportunity to cross-examine the declar-ant.
[T]he first issue is whether the statement at issue was “testimonial.” While the Supreme Court specifically declined to define “testimonial,” it recognized that, at a minimum testimonial statements include: “prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and police interrogations.” State v. Leonard, 05-42, p. 19 (La.App.5 Cir. 7/26/05), 910 So.2d 977, 989, citing Crawford, supra, 124 S.Ct. at 1374. The Cranford Court stated that “testimony” is “[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.” State v. Leonard, 05-42 at 19-20, 910 So.2d at 989, citing Crawford, supra, 124 S.Ct. at 1364. According to the Supreme Court, an accuser making a formal statement to government officials bears testimony in a sense that a person making a casual remark to an acquaintance does not. Id. As examples of testimonial statements, the Crawford Court lists affidavits, custodial examinations, depositions, prior testimony, confessions, or similar pretrial statements that declarants would reasonably expect to be used in a prosecution. The Supreme Court also refers to statements that were made under circumstances that would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. State v. Leonard, 05-42 at 20, 910 So.2d at 989-90 citing Crawford, supra, 124 S.Ct. at 1364.[8]
In the present case, we find that the rule established in Crawford has no application here because the statements at issue were not testimonial in nature. Here, Placide’s name was found on pieces of mail inside his residence. Providing his name and contact information to Sprint and his employer were likely not made under “circumstances that would lead an objective witness to reasonably believe the statements would be available for use at a later trial.” Moreover, as previously stated, the fact that Placide’s name was found on mail located inside the residence located at 519 Homewood Place does not constitute hearsay and, thus, the two-prong Robert test need not be addressed.
Even if admission of the evidence was erroneous, it was harmless error. The question raised by erroneous admission of evidence and confrontation errors is whether the trial court’s error in admitting it was harmless beyond a reasonable doubt.[9] To be harmless, the improperly admitted evidence must not have contributed to the verdict.[10] Factors to be con *400 sidered include the importance of the evidence to the State’s case, whether the testimony was cumulative, the presence or absence of additional corroboration of the evidence, the extent of cross-examination permitted, and the overall strength of the State’s case.[11]
In this case, Placide was charged with violating La. R.S. 14:95.1, possessing a firearm by a convicted felon. To support a conviction under La. R.S. 14:95.1, the State must prove that Placide possessed the firearm; that he has a prior conviction for an enumerated felony; that he possessed the firearm within ten years of the prior conviction; and that he had general intent to commit the crime.[12] Constructive possession is sufficient to satisfy the element of possession.[13] The determination of whether there is “possession” sufficient to convict depends on the particular facts of the case.[14]
The record in this case indicates that Placide stipulated to the admission of the record establishing his prior conviction for possession with intent to distribute marijuana on October 28, 1998. Further, Errol Falterman, the landlord, testified that both Placide and his wife leased the residence located at 519 Homewood Place, and Fal-terman identified the lease signed by both parties, which lease was introduced into evidence. Although Falterman testified that he mostly dealt with Placide’s wife and only saw Placide outside the house on a few occasions, he also testified that he had only been inside the residence “once, twice, at the most” to make repairs. We note the trial court specifically found Mr. Falterman to be a credible witness who connected Placide to the residence where the weapons were found.
Additionally, the testimony of the officers at trial established that the guns were found underneath the mattress in the master bedroom of the house that Placide and his wife jointly leased. When a gun is found in an area that the defendant has customarily occupied, the courts have generally found this to be evidence of constructive possession.[15] State v. Ware, supra (citing State v. Jackson),[16] wherein this Court found the defendant had constructive possession of a gun that was found under the bed where defendant slept. “Because the gun was found under the defendant’s bed, this Court stated that the defendant had easy access to it, and, therefore, the evidence was sufficient to show he possessed the gun.”[17]
Finally, although he objected to the introduction of the items seized from his car at trial, Placide failed to assign error to their admissibility on appeal. Accordingly, the documentation seized from the car also helps to establish that Placide constructively possessed the contraband seized from the master bedroom at 519 Homewood Place. We find that the circumstances and evidence presented at trial *401 support a determination that Placide was in constructive possession of the guns even without the documentation found in the master bedroom being admitted at trial.
This assignment of error is without merit.
Our error patent review reveals that neither the sentencing minutes nor the transcript reflects that Placide was advised of the time period for seeking post-conviction relief as provided in La.C.Cr.P. art. 930.8.
We correct the error by now informing Placide, via this opinion, that no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La.C.Cr.P. art. 914 or 922.[18]
For the foregoing reasons, the conviction and sentence are affirmed.

AFFIRMED

. Crawford v. Washington, 541 U.S. 36, 61, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), holding that the Confrontation Clause bars the admission of an out-of-court “testimonial” statement against a criminal defendant unless the defendant is unavailable and had a prior opportunity to cross-examine the declarant.

. Price v. Roy O. Martin Lumber Co., 04-0227 (La.App. 1 Cir. 4/27/05), 915 So.2d 816, 822.

. State v. Collins, 535 So.2d 973, 976 (La.App. 2 Cir.1988).

. Id.

. Id.

. State v. Landry, 388 So.2d 699 (La.1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981).

. Ohio v. Roberts, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).

. State v. Parks, 08-423 (La.App. 5 Cir. 11/25/08), 2 So.3d 470, 478, writ denied, 09-0142 (La.10/2/09), 18 So.3d 101.

. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Gibson, 391 So.2d 421, 427-28 (La.1980).

. State v. Wille, 559 So.2d 1321, 1322 (La.1990), cert denied, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992); State v. Banks, 439 So.2d 407, 409 (La.1983); Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081-82, 124 L.Ed.2d 182 (1993); State v. Everidge, 96-2665, p. 8 (La. 12/2/97), 702 So.2d 680, 685; State v. Davis, 05-987, p. 15 (La.App. 5 Cir. 5/9/06), 930 So.2d 1099, 1107.

. Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); State v. Louviere, 00-2085, p. 28 (La.9/4/02), 833 So.2d 885, 905, cert. denied, 540 U.S. 828, 124 S.Ct. 56, 157 L.Ed.2d 52 (2003).

. See, State v. Gordon, 00-1013, p. 14 (La.App. 5 Cir. 11/27/01), 803 So.2d 131, 142, writs denied, 02-0362 (La.12/19/02), 833 So.2d 336, 02-0209 (La.2/14/03), 836 So.2d 134.

. State v. Ware, 01-194 (La.App. 5 Cir. 8/28/01), 795 So.2d 495, 499 (citing State v. Mose, 412 So.2d 584 (La.1982)).

. State v. Ware, supra (citing State v. Trahan, 425 So.2d 1222, 1226 (La.1983)).

. Id.

. 97-1246 (La.App. 5 Cir. 4/13/98), 712 So.2d 934, 937-38, writ denied, 98-1454 (La.10/16/98), 726 So.2d 37.

. State v. Ware, supra.

. State v. Thomas, 10-220 (La.App. 5 Cir. 11/9/10), 54 So.3d 678, 688, writ denied, 10-2758 (La.4/25/11), 62 So.3d 89 and writ denied, 10-2752 (La.5/20/11), 63 So.3d 974.