HANS J. LILJEBERG, Judge.
pOn February 11, 2010, defendant, Joseph Christopher Austin, was charged in a fourteen-count indictment with nine counts of illegal possession of stolen things (counts 1-9), in violation of LSA-R.S. 14:69, and five counts of simple burglary (counts 10-14), in violation of LSA-R.S. 14:62. He was arraigned and pled not guilty to all charges. Thereafter, the State amended the indictment, dismissing counts 1 through 9 and 11, and proceeded to trial on counts 10, 12, 13, and 14.[1] On July 27, 2011, a six-person jury returned a verdict of guilty as charged on all counts.
The State filed a multiple offender bill of information alleging defendant to be a fourth felony offender. On September 14, 2011, after a hearing, the trial court found defendant to be a second felony offender. Defendant was sentenced to six years at hard labor on each count, to run consecutively, for a total of twenty-four years.[2] Defendant appeals.

UFACTS

At approximately 2:30 a.m. on July 25, 2009, Deputy Daniel Bergeron of the St. Charles Parish Sheriffs Office responded to a report of a Lexus vehicle crashing in a parking lot of an apartment building on *310 Lakewood Drive in Luling, Louisiana. A witness informed the officer that she had séen two white males fleeing the vehicle. The vehicle did not have a license plate on it, but had a temporary tag affixed to the rear window. It was determined that the temporary tag had been stolen from a car dealership in Jefferson Parish. A check of the vehicle identification number (VIN) revealed that it was registered to Cherie Suhor.
Approximately two hours later, Deputy Bergeron responded to a report of a vehicle burglary on Willowdale Boulevard, where the victim informed the officer that a black Mizuno bag, among other things, had been taken from his vehicle. Deputy Bergeron recalled that he had just seen a black Mizuno bag in the crashed vehicle he had investigated hours before. Deputy Bergeron testified that the owner of the bag accompanied him back to the scene of the crash where he identified the bag as his own.
David Boudry testified that his Toyota Corolla was burglarized on the evening of July 25, 2009, at his residence on Willow-dale Boulevard in Luling. A pair of Nike shoes, trash bags, baseballs, and a Mizuno duffel bag were taken from the vehicle. He stated that he did not authorize defendant or anyone else to enter his vehicle.
Eric Berteau testified that his Toyota Tacoma was burglarized on the evening of July 25, 2009, at his residence on Lakewood Drive in Luling. A laptop computer, an iPod and accessories, a book, and a pair of running shoes were taken from the vehicle. He stated that he did not authorize defendant or anyone else to enter his vehicle.
| Jonathan Warren testified that his vehicle was burglarized on the evening of July 25, 2009, at his residence on Beaupre Drive in Luling. A book of CD’s, a half carton of cigarettes, and a red flashlight were taken from the vehicle. He stated that he did not authorize defendant or anyone else to enter his vehicle.
Randy St. Blanc testified that his Toyota Sequoia was burglarized on the evening of July 25, 2009, at his residence on Beaupre Drive in Luling. A pair of sunglasses and a change holder were taken from the vehicle. He stated that he did not authorize defendant or anyone else to enter his vehicle.
Cherie Suhor testified that she had known defendant since they were children and that defendant lived with her from April 2009 to January 2010. In July 2009, Suhor lived in Metairie with her two sons, defendant, defendant’s girlfriend, and defendant’s baby. At the time, Suhor owned a Lexus, and she and defendant each had a set of keys for the vehicle.
Errol Falcon, Jr. testified that he was defendant’s friend and had known him for 16 or 17 years. Falcon testified that on the morning of July 24, 2009, he met defendant at his residence, and they went to some stores. Defendant had to bring Su-hor to work later that day, so Falcon brought defendant back home before he left for Biloxi, Mississippi. When Falcon arrived back in Louisiana later that night, defendant was at Falcon’s house. Defendant told Falcon that he had committed several vehicle burglaries, that the police were after him, and that he had to ditch the Lexus in the Lakewood area. Defendant had to pick up Suhor from her job in Gramercy, and because he did not have a vehicle, Falcon drove defendant in his vehicle to pick her up.
Meanwhile, earlier in the evening, around 9:43 p.m., Suhor had called her boyfriend, Damien Schnyder. Thereafter, he came to her place of work. Later, in the early morning hours of July 25, 2009, when Suhor finished work, defendant | sand *311 Falcon picked her and Schnyder up. According to Falcon, on the way back home, defendant plotted a course of action, and they decided to report the Lexus stolen.
At approximately 6:30 a.m., Suhor reported the Lexus stolen. The vehicle had been towed to the detective bureau and Detective Joseph Dewhirst contacted Su-hor to identify the vehicle. Suhor positively identified the vehicle as' her own and gave consent for the officers to search it. During the course of the search, the trunk was opened which revealed a license plate registered to Suhor and the Lexus. Additionally, a prescription pill bottle in defendant’s name was recovered from the vehicle. Detective Dewhirst testified that once Suhor saw the stolen property in her vehicle, “she knew in her heart that it was Joey Austin that did the burglaries.” At trial, when Suhor was shown several photographs of the interior of her vehicle, she stated that the items depicted in the photographs were not in her vehicle when defendant dropped her off at work on July 24,2009.
On January 8, 2010, Detective Jody Fah-rig interviewed defendant. After he was advised of his rights, defendant waived his rights and gave a statement. He denied burglarizing any vehicles on July 24-25, 2009.
On July 8, 2011, Detectives Pitchford, Fahrig, and Dewhirst conducted an interview with Damien Schnyder. Schnyder told the detectives that he received a phone call from Suhor around 1:00 or 2:00 a.m. on July 25, 2009, telling him that her car was stolen and that she needed him to pick her up from work because she did not have a ride. Schnyder said he picked her up and they left around 2:00 or 2:30 a.m. At trial, Detective Pitchford testified that he thought this statement was inaccurate, because the investigation revealed that Su-hor did not know anything about her car until well after 2:30 a.m., when the car had been received by the sheriffs office. Furthermore, Suhor’s cell phone records introduced into evidence |6do not show that Schnyder received a call from Suhor around 1:00 or 2:00 a.m. Suhor did not report her Lexus stolen until 6:30 a.m.

LAW AND DISCUSSION

In his first assignment of error, defendant argues that the evidence was insufficient to prove the elements of the crimes charged beyond a reasonable doubt. He claims that because the evidence did not support the verdict, the trial court erred in denying his post-verdict judgment of acquittal.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Michel, 09-953, p. 4 (La. App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885. Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20, p. 6 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id., 08-20 at 7, 985 So.2d at 240.
*312 In the present case, defendant was convicted of four counts of simple burglary. Simple burglary is defined in pertinent part as “the unauthorized entering of any ... vehicle ... with the intent to commit a felony or any theft therein.” LSA-R.S. 14:62. Specific intent is required for a conviction for simple burglary, |7and it may be inferred from the circumstances and actions of the accused. State v. Naquin, 10-474, p. 9 (La.App. 5 Cir. 2/15/11), 61 So.3d 67, 71. Specific criminal intent is defined as “ ‘that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.’ ” Id.
Therefore, to convict the defendant, the State was required to prove beyond a reasonable doubt that defendant entered the vehicles without authorization and had the specific intent to commit a felony or theft therein. Naquin, 10-474 at 10, 61 So.3d at 72. In addition to proving these statutory elements, the State is required to prove defendant’s identity as the perpetrator. Id. In a burglary prosecution, the evidence need not be direct; it suffices if there is some evidence that the circumstances lead logically to the conclusion that the accused entered the structure. State v. Johnson, 310 So.2d 600, 603 (La.1975). See also State v. Thompson, 46,473 (La. App. 2 Cir. 9/21/11), 72 So.3d 978, writ denied, 11-2159 (La.3/23/12), 85 So.3d 88.
In the instant case, the four victims testified that items went missing from their respective vehicles oh July 24-25, 2009, and that they did not authorize defendant or anyone else to enter their vehicles. The missing items were then discovered in the vehicle to which defendant had access and was driving on the evening of July 24, 2009. In addition, Errol Falcon, Jr., who was with defendant before and after the burglaries, testified that defendant admitted to him that he had committed several vehicle burglaries. Although defendant denied any involvement in the burglaries and Damien Schnyder gave a different version of events, the jury was presented with all of the evidence and apparently rejected their testimony.
The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact. Naquin, 10-474 at 13, 61 So.3d at 73. The trier of fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness.' Id. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. State v. Jones, 08-20, p. 7 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
Considering the entire record before us and viewing the evidence in the light most favorable to the State, we find that the evidence presented was sufficient to convince a rational trier of fact that defendant was guilty of the crimes charged beyond a reasonable doubt.
Defendant also argues that the trial court erred in denying his motion for post-verdict judgment of acquittal. In this motion, defendant argued that the evidence did not reasonably permit a finding of guilt, because: 1) the State did not exclude the reasonable hypothesis of innocence that a spare key in Suhor’s vehicle was used by someone other than defendant to commit these burglaries; and 2) the only direct evidence connecting defendant to the vehicle burglaries was the uncorroborated self-serving testimony of a convicted felon, Errol Falcon, Jr.
*313 At trial, defense counsel argued that someone other than defendant could have stolen the vehicle and used it to commit the burglaries and that Falcon’s testimony was unreliable and uncorroborated. The jury, in the exercise of its discretion as trier of fact, apparently rejected these theories. Considering our finding that the evidence was sufficient to prove the elements of the crimes charged beyond a reasonable doubt, we further find that the trial judge did not abuse his discretion in denying defendant’s post-verdict judgment of acquittal.
In his second assignment of error, defendant argues that the trial court erred in denying his motion to quash on the grounds of double jeopardy.'
IflTrial of this matter originally commenced on July 11, 2011. During the original trial, the State called Errol Falcon, Jr. as a witness. Falcon, who had been charged with the same simple burglary charges as defendant, testified that he had pled guilty to nine counts of possession of stolen property, had not yet been sentenced thereon, and that the State promised to dismiss the burglary charges against him if he testified against defendant. Indeed, the State indicated that the burglary charges against Falcon had been dismissed. Falcon’s testimony continued until Falcon’s attorney objected, via correspondence, to his client being called as a witness and testifying without presence of counsel. Falcon’s counsel arrived in the courtroom soon thereafter and advised his client not to testify any further. Falcon informed the court that he would not testify any further. As a result, defense counsel filed a motion for mistrial. Pursuant to LSA-C.Cr.P. art. 775(5), defense counsel alleged that it was impossible to proceed with the trial in conformity with law since Falcon had offered testimony during direct examination, but could then not be cross-examined. On this basis, the court granted the mistrial.
In anticipation of trial commencing anew, defense counsel moved to quash the indictment alleging a double jeopardy violation since defendant had already been tried by a jury on these charges. The trial court denied the motion to quash. Defendant objected and now seeks review of this denial on appeal.
Normally, when a defendant’s motion for a mistrial is granted, double jeopardy does not bar a second prosecution. State v. Amato, 96-0606, p. 13 (La.App. 1 Cir. 6/30/97), 698 So.2d 972, 984, writs denied, 97-2626 (La.2/20/98), 709 So.2d 772 and 97-2644 (La.2/20/98), 709 So.2d 772. However, re-prosecution is barred by double jeopardy when the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial. Id.
LSA-C.Cr.P. art. 591 provides:
|inNo person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant.
In the instant case, defendant filed a motion to quash, arguing that the State knowingly and deliberately called Falcon as a witness without the knowledge or consent of his counsel. This, defendant argued, forced him to move for a mistrial. Because he was provoked into moving for a mistrial, defendant argued that his second prosecution should have been barred by double jeopardy.
A review of the record belies defendant’s assertion that the State intentionally acted to provoke his motion for mistrial. The State consistently maintained that Falcon *314 had been informed that any testimony offered in regard to the burglary charges would not be used against him and that any testimony offered in regard to the possession of stolen property charges would not be used against him should he withdraw his guilty plea and proceed to trial. The State also maintained that the burglary charges against Falcon had been dismissed. This makes clear that the State called Falcon to the stand under the assumption that he had been granted immunity. As such, the State did not act in bad faith as defendant contends. Even if the State was negligent in calling a counseled witness without contacting or informing counsel, mere negligence is not the type of prosecutorial misconduct sufficient to bar a second prosecution. See Amato, 96-0606 at 16, 698 So.2d at 985.
Thus, pursuant to LSA-C.Cr.P. art. 591, since a mistrial was legally ordered under the provisions of LSA-C.Cr.P. art. 775, double jeopardy does not bar a second prosecution. As a result, the trial court did not abuse its discretion in denying defendant’s motion to quash.
[ nIn his third assignment of error, defendant argues that his sentences are unconstitutionally excessive due to their consecutive nature.
This Court has held that the failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Hunter, 10-552, pp. 4-5 (La.App. 5 Cir. 1/11/11), 59 So.3d 1270, 1272; LSA-C.Cr.P. art. 881.1(E). This Court has also held that when the consecutive nature of sentences is not specifically raised in the trial court, then the issue is not included in the review for constitutional excessiveness, and the defendant is precluded from raising the issue on appeal. State v. Escobar-Rivera, 11-496, p. 13 (La.App. 5 Cir. 1/24/12), 90 So.3d 1, 8, writ denied, 12-0409 (La.5/25/12), 90 So.3d 411.
In this case, the record reflects that defendant’s motion to reconsider sentence challenged his sentence on the grounds of excessiveness. He did not specifically object to the consecutive nature of his sentences. Accordingly, defendant is not entitled to review of the consecutive nature of his sentences on appeal. However, we will review his sentences for constitutional excessiveness.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Smith, 01-2574, p. 6 (La.1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. Id. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Lawson, 04-334, p. 6 (La.App. 5 Cir. 9/28/04), 885 So.2d 618, 622.
A trial judge has broad discretion when imposing a sentence and a reviewing lipcourt may not set a sentence aside absent a manifest abuse of discretion. State v. Dorsey, 07-67, p. 5 (La.App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. Id. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. State v. Pearson, 07-332, p. 15 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656. In reviewing a trial court’s sentencing discre *315 tion, three factors are considered: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts. Id. at 15-16, 975 So.2d at 656.
Defendant’s sentences are within the statutory limits. LSA-R.S. 14:62(B) provides: “Whoever commits the crime of simple burglary shall be fined not more than two thousand dollars, imprisoned with or without hard labor for not more than twelve years, or both.” LSA-R.S. 15:529.1(A)(1) provides:
If the second felony is.such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.
Accordingly, since the offense of simple burglary was punishable by imprisonment for a term less than natural life, LSA-R.S. 15:529.1(A)(1) dictates a sentencing range of six years to twenty-four years for a second felony offender. Defendant was sentenced to six years on each of the four counts.
The record reflects that the trial judge who presided over defendant’s trial was the same judge who presided over defendant’s adjudication and sentencing as a multiple offender. Accordingly, the trial judge was aware that defendant went on |1Ha crime spree in the span of several hours, burglarizing four separate vehicles.[3] The record also reflects that defendant had been previously convicted of simple burglary of an inhabited dwelling, in violation of LSA-R.S. 14:62.2, and possession of marijuana with intent to distribute, in violation of LSA-R.S. 40:966(A).
Furthermore, reviewing similar cases, defendant’s sentence is supported by comparison. In State v. Ewens, 98-1096, p. 2 (La.App. 5 Cir. 3/30/99), 735 So.2d 89, 91, writ denied, 99-1218 (La.10/8/99), 750 So.2d 179, the defendant was convicted of simple burglary of a motor vehicle in violation of LSA-R.S. 14:62, was adjudicated a second felony offender, and was sentenced as such to six years at hard labor. He challenged his sentence as excessive on appeal, which this Court rejected, noting as follows:
As a second felony offender with an underlying conviction of simple burglary, defendant’s sentencing range was six to twenty-four years. Thus, defendant’s six year sentence is half of the twelve year sentence he could have received upon a first conviction of simple burglary and, by law, is the minimum sentence he could receive as a second felony offender.
* * *
[W]e find that not only was defendant’s six year sentence as a double felony offender well within the discretion of the trial court, it was the statutory minimum, and it is not constitutionally excessive.
Id., 98-1096 at 11-12, 735 So.2d at 96 (Emphasis in original).
In the instant case, defendant was convicted of four counts of simple burglary, and he was sentenced, as a second felony offender pursuant to LSA-R.S. 15:529.1, to *316 six years at hard labor on each count. Considering the record before us along with the applicable jurisprudence, we find that defendant’s sentences are | Mnot constitutionally excessive. Accordingly, the trial court did not abuse its discretion in imposing defendant’s sentences.
In addition to appellate counsel’s assignments of error, defendant filed a pro se brief setting forth two additional assignments of error. In his first pro se assignment of error, defendant argues that his Sixth Amendment right to confrontation was violated when the trial court permitted Cherie Suhor’s cell phone records to be introduced at trial without having been properly authenticated.
Because authentication of evidence is a condition precedent to admissibility, an exhibit that is not authenticated does not constitute competent evidence. State v. Placide, 11-1061, (LaApp. 5 Cir. 6/28/12), 109 So.3d 394, 2012 WL 2476396. Evidence must either be authenticated, as provided in LSA-C.E. art. 901, or self-authenticating, as provided in LSA-C.E. art. 902. Id. LSA-C.E. art. 901(B)(1) provides that evidence can be authenticated by the testimony of a witness with knowledge that a matter is what it is claimed to be. Additionally, LSA-C.E. art. 901(B)(6)(a) provides that telephone conversations, by evidence that a call was made to the number assigned by the telephone company to a particular person or business, may be authenticated or identified in compliance with LSA-C.E. art. 901, if circumstances, including self-identification, show the person answering to be the one called.
In the instant case, when presented with the phone records at issue, Suhor identified the exhibit as her own cell phone records and identified calls exchanged between herself, Schnyder, and defendant. Considering that Suhor is a witness with knowledge of her own cell phone records, the trial court did not abuse its discretion in concluding that the evidence referred to by Suhor was in fact what it was purported to be — the cellular telephone records pertaining to the account of Cherie Suhor.
^Defendant also argues that the phone records constituted out-of-court testimonial statements, the introduction of which violated his right to confrontation. Specifically, he contends that because the State presented no one from the phone company to authenticate the records, he was unable to conduct a cross-examination regarding the records’ authenticity, thereby violating his confrontation right.
First, a phone company representative is not required to authenticate telephone records. Rather, as articulated above, LSA-C.E. art. 901(B)(1) permits authentication by a witness with knowledge and LSA-C.E. art. 901(B)(6)(a) permits authentication via self-identification by the person receiving calls. As such, defendant was able to and in fact did cross-examine the authenticator of the records, Suhor.
Second, the Louisiana Supreme Court has held that telephone records do not constitute hearsay since they are “generated solely by the electrical and mechanical operations of the computer and telephone equipment, and [are] not dependent upon the observations and reporting of a human declarant.” See State v. Armstead, 432 So.2d 837, 839^41 (La.1983); and State v. Carter, 97-2902, pp. 25-30 (LaApp. 4 Cir. 5/10/00), 762 So.2d 662, 678-81, writ denied, 00-1598 (La.6/15/01), 793 So.2d 1233, cert, denied, 534 U.S. 1116, 122 S.Ct. 926, 151 L.Ed.2d 889 (2002). In addition, the U.S. Supreme Court has held that the Confrontation Clause applies only to testimonial hearsay. See Davis v. Washington, 547 U.S. 813, 823-824, 126 S.Ct. 2266, 2274-75,165 L.Ed.2d 224 (2006).
*317 Consequently, since the records were properly authenticated by a person who was subject to cross-examination and because they do not constitute hearsay, defendant’s confrontation right was not violated. Accordingly, the trial court did not abuse its discretion in admitting these records into evidence.
[1fiIn his second pro se assignment of error, defendant argues that the trial court erred in denying his motion to suppress his statement. He contends that he asserted his right to counsel, which was not honored, and that his statement was therefore obtained in violation of that right.
On July 20, 2011, a motion to suppress hearing was held. At this hearing, Detective Fahrig testified that he and Detective Pitchford conducted an interview of defendant on January 8, 2010, during which defendant gave a statement. Prior to giving his statement, Detective Fahrig advised defendant of his Miranda[4] rights with an advice of rights form. Defendant indicated he understood his rights, and waived them, initialing and signing the form.
During the hearing, defendant argued that he invoked his right to counsel during his statement when he said: “If that’s what /all gonna arrest me for? F* * *, take me to jail and let me f* * *ing have ... call a lawyer and sh* * because this is bullsh* *.” Defendant argued that because he invoked his right to counsel and his statement was obtained in violation of that right, it should be suppressed. The trial judge denied the motion, ruling: “I do not find that there was some unequivocal invocation of [defendant’s] sixth amendment right to counsel.” Defendant objected to the ruling and now seeks review of that denial on appeal.
Trial courts are vested with great discretion when ruling on a motion to suppress. State v. Smith, 11-638, p. 9 (La. App. 5 Cir. 3/13/12), 90 So.3d 1114, 1120. Thus, the ruling of a trial judge on a motion to suppress will not be disturbed absent an abuse of that discretion. Id. Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived his Miranda rights, and 117that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements or promises. LSA-C.Cr.P. art. 703(D); State v. Allen, 06-778, p. 4 (La. App. 5 Cir. 4/24/07), 955 So.2d 742, 747, writ denied, 08-2432 (La.1/30/09), 999 So.2d 754.
During the suppression hearing in the instant case, Detective Fahrig stated he advised defendant of his Miranda rights with an advice of rights form. Detective Fahrig testified that defendant acknowl-edgéd and understood his rights, that he was not coerced into giving a statement, and that he gave it voluntarily. Additionally, at the beginning of his statement, defendant affirmed he had been read the advice of rights form and had signed it, and that he had been made aware of his rights and was willing to give a statement. Indeed, the advice of rights form reflects that defendant initialed and signed it, indicating that he understood his rights, that he was willing to answer questions without a lawyer, and that no threats or promises had been made to him to induce him to answer questions or give up his rights.
In consideration of these facts, we find that the State established that defendant was advised of his Miranda rights, that he voluntarily and intelligently waived them, and that his statement was made freely *318 and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements or promises.
After a knowing and voluntary waiver of Miranda rights, law enforcement officers may continue questioning a suspect unless or until he clearly requests an attorney. Allen, 06-778 at 5, 955 So.2d at 748. “If the individual states that he wants an attorney, the interrogation must cease until an attorney is present.” Miranda, 384 U.S. at 474, 86 S.Ct. at 1628. In order to invoke his right to counsel, the suspect must articulate his desire to have counsel present with sufficient clarity to enable a reasonable police officer, in the circumstances, to |1Runderstand his statement to be a request for an attorney. Allen, 06-778 at 5, 955 So.2d at 748. In analyzing whether there has been a direct, clear, unequivocal, and unambiguous request for counsel, courts must give a broad, rather than narrow, interpretation to the suspect’s request. Id. at 6, 955 So.2d at 748.
In Allen, this Court found that the defendant’s statements that he thought he might want to speak to an attorney were ambiguous such that the officer’s cessation of questioning was not required. Allen, 06-778 at 9, 955 So.2d at 750. Similarly, in Davis v. U.S., 512 U.S. 452, 462, 114 S.Ct. 2850, 2357, 129 L.Ed.2d 362 (1994), the U.S. Supreme Court found that the defendant’s remark that “[m]aybe I should talk to a lawyer” was not an unambiguous or unequivocal request for counsel that required the officers to stop their questioning. Id.
In the instant case, the claimed invocation was: “If that’s what y’all gonna arrest me for? F* * *, take me to jail and let me f* ⅝ *ing have ... call a lawyer and sh* * because this is bullsh* Since defendant prefaced his statement with the conjunction “if,” indicating a hypothetical situation, this was not an unambiguous or unequivocal request for counsel. Accordingly, we find that the trial court did not abuse its discretion in denying defendant’s motion to suppress his statement.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review reveals one error requiring corrective action.
The trial court failed to inform defendant of the prescriptive period for seeking post-conviction relief. Although the minute entry indicates that defendant was informed of this period, the transcript indicates otherwise. When there is a conflict between the minute entry and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983).
11flThis Court has previously corrected the failure to advise a defendant of the prescriptive period for filing for post-conviction relief by providing such notice to the defendant in its opinion, rather than remanding the matter to the trial court. See State v. Ramsey, 10-333, p. 10 (La. App. 5 Cir. 1/25/11), 60 So.3d 36, 42; State v. Davenport, 08-463, p. 10-11 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451, writ denied, 09-0158 (La.10/16/09), 10 So.3d 473. Accordingly, we hereby advise defendant that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of LSA-C.Cr.P. arts. 914 or 922. See LSA-C.Cr.P. art. 930.8.

DECREE

For the foregoing reasons, we affirm defendant’s convictions and sentences.

AFFIRMED

. Trial had originally commenced on July 11, 2011, but it terminated on July 12, 2011, when the trial judge granted defendant's motion for mistrial.

. The trial judge did not sentence defendant on his underlying convictions. Rather, he sentenced defendant as a second felony offender to six years on each count. LSA-R.S. 15:529.1(D)(3) provides that the "court shall sentence [defendant] to the punishment prescribed in this Section, and shall vacate the previous sentence if already imposed ...” 0emphasis added). Thus, LSA-R.S. 15:529.1 does not mandate that a sentence be imposed on an underlying conviction before the sentence on a multiple bill is imposed. See State v. Turner, 09-1079, p. 9 (La.App. 5 Cir. 7/27/10), 47 So.3d 455, 460, n. 8; and State v. Sanders, 97-892, p. 3 (La.App. 5 Cir. 3/25/98), 717 So.2d 234, 236, n. 2, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774.
Further, in State v. Shaw, 06-2467, p. 20 (La. 11/27/07), 969 So.2d 1233, 1245, the Louisiana Supreme Court held that LSA-R.S. 15:529.1 does not prohibit enhancing multiple sentences for multiple convictions obtained on the same date, whether the convictions result from separate felonies committed at separate times or arise out of a single criminal act or episode.

. This Court has found that if the trial judge who imposed sentence on a defendant's underlying conviction is the same judge who imposes the enhanced sentence in a multiple offender adjudication, that judge is deemed to be aware of the nature of the crime for the underlying conviction. State v. Woods, 09-399, pp. 28-29 (La.App. 5 Cir. 3/9/10), 38 So.3d 391, 412 writ denied, 10-0784 (La.10/29/10), 48 So.3d 1096.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).